The BECKER ELECTRIC COMPANY; Plaintiff,

Bertke Electric Company, Inc.; and Stapleton Electric Company, Plaintiffs–Appellants,

v.

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION # 212 AFL–CIO; and International Brotherhood of Electrical Workers, Defendants–Appellees.

No. 90–3348.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 27, 1990.

Decided Feb. 5, 1991.

Daniel P. Dooley (argued) and Raymond D. Neusch, Frost & Jacobs, Cincinnati, Ohio, for Becker Elec. Co., plaintiff, Bertke Elec. Co., Inc., and Stapleton Elec. Co., plaintiffs-appellants.

Gary Moore Eby (argued), Kircher & Phalen, Cincinnati, Ohio, Gary Snyder, Jerry A. Spicer, Snyder, Rakay & Spicer, Dayton, Ohio, and Richard M. Resnick, Sher-

man, Dunn, Cohen, Leifer & Yellig, Washington, D.C., for Intern. Broth. of Elec. Workers, Local Union # 212 AFL–CIO and Intern. Broth. of Elec. Workers, defendants-appellees.

Before MARTIN and JONES, Circuit Judges, and ENGEL, Senior Circuit Judge.

PER CURIAM.

Plaintiffs-appellants Bertke Electric Company, Inc. and Stapleton Electric Company [1] are electrical contracting companies. For many years, Bertke and Stapleton were parties to a collective bargaining agreement ("CBA") with defendant-appellee International Brotherhood of Electrical Workers, Local Union 212, AFL–CIO ("Local 212"). The most recent CBA between the parties ran from June 1, 1981 through May 31, 1984. During negotiations in early 1984, Local 212 demanded that a "work preservation clause" be included in the contract. The proposed work preservation clause read as follows:

(a) In order to protect and preserve, for the employees covered by this Agreement, all work heretofore performed by them and in order to prevent any device or subterfuge to avoid the protection and preservation of such work, it is hereby agreed as follows: If and when the Employer shall perform any work of the type covered by this Agreement, under its own name or under the name of another, as a corporation, company partnership or any other business entity, including a joint venture, wherein the employer, through its officers, directors, partners, or stockholders, exercises either directly or indirectly management, control or majority ownership the terms and conditions of this Agreement shall be applicable to all such work.

J.App. at 10 (complaint).

Local 212 desired the clause due to a practice in the construction industry called "double-breasting". A double-breasted, or dual shop, employer maintains one company that is a signatory to a CBA while maintaining a second, non-union company in the same line of work in order to utilize non-union labor. Local 212 feared that these non-union shops would diminish its job opportunities.

There was evidence that Bertke had engaged in double-breasting. Bertke Electric was formed in 1928 as a closely-held corporation controlled by the Bertke family. In the early 1980s, Bertke Investments, Inc. was formed as an investment holding company. By 1984, Bertke Investments controlled 100% of the stock of Bertke Electric as well as that of a subsidiaries named Belemech, Inc., a non-union electrical contracting company, and Bertke Services. All these concerns were controlled by the Bertke family and had interlocking directorships. Belemech, as a non-union shop, was formed to obtain small electrical contracting jobs because the market for union contractors, such as Bertke Electric, had dried up.[2] J.App. at 220 (deposition of Frank Bertke).

During July and August 1984, plaintiffs bargained with Local 212 to impasse. During negotiations, the work preservation clause was the primary impediment to an agreement. Local 212 commenced a strike on August 27, 1984. The local picketed Bertke and Stapleton's offices and construction sites.

On April 3, 1986, plaintiffs filed this action in the U.S. District Court for the Southern District of Ohio, Judge Herman J. Weber presiding, against Local 212 and the International Brotherhood of Electrical Workers, AFL–CIO ("the International"). Plaintiffs alleged that Local 212's strike was unlawful because the purpose was to force plaintiffs to agree to the work preservation clause. Plaintiffs argued that the clause violated section 8(e) of the National Labor Relations Act (NLRA), 29 U.S.C.

---

**1.** Becker Electric Company was a plaintiff in district court, but did not join the appeal. Three other electric companies who were plaintiffs below—Denier, Norvell, and Wray—also declined to join Bertke and Stapleton on appeal.

**2.** In October 1986, Local 212 was decertified as the representative of Bertke Electric's employees. After Bertke Electric became non-union, Belemech ceased to exist.

§ 158(e), and that therefore the strike was in violation of sections 8(b)(4)(i)-(ii)(A) of the NLRA.[3] Plaintiffs also maintain that the International was liable because it had encouraged and authorized the unlawful strike. Plaintiffs asked for damages of $5,622,000.00.

Plaintiffs and defendants both moved for summary judgment. On December 27, 1989, Magistrate Robert A. Steinberg issued his Report and Recommendation denying plaintiffs' motion and granting summary judgment for defendants. The Magistrate found that the work preservation clause did not violate NLRA section 8(e).[4]

The Supreme Court has stated that work preservation clauses are designed to preserve "for the contracting employees themselves work traditionally done by them." *NLRB v. Enterprise Ass'n of Pipefitters, Local Union No. 638*, 429 U.S. 507, 517, 97 S.Ct. 891, 897, 51 L.Ed.2d 1 (1977). To determine whether the work preservation clause in the instant case was lawful, the Magistrate applied a two-part test from *NLRB v. Int'l Longshoreman's Ass'n*, 447 U.S. 490, 100 S.Ct. 2305, 65 L.Ed.2d 289 (1979) (*ILA I*): (1) the clause "must have as its objective the preservation of work traditionally performed by employees represented by the union", and (2) "the contracting employer must have the power to give the [union] employees the work in question." *Id.* at 504–05, 100 S.Ct. at 2313–14. As an alternative means to validate the clause, the Magistrate also discussed the "construction industry proviso" of section 8(e). The proviso exempts contracting agreements done at a construction site between a labor organization and a construction employer. The purpose of the proviso is to prevent "job site friction between union and nonunion workers" by allowing a contractor not to subcontract construction site work to a nonunion subcontractor. J.App. at 84.

The Magistrate found that the work preservation clause did not violate section 8(e) because its purpose was to preserve work traditionally done by Local 212's members, and *not* to affect nonunion companies like Belemech affiliated with plaintiffs. The Magistrate also found that the clause had no secondary objectives, and that Bertke and Stapleton control the work sought by Local 212. Alternatively, the Magistrate determined that the clause would be protected by the construction industry proviso because the clause is limited to job site work. As a result of these findings, the Magistrate found that the issue of the International's liability was moot.

On March 16, 1990, the district court adopted the Magistrate's Report and Recommendation and granted summary judgment for defendants. This timely appeal followed.

## I

The NLRA prohibits strikes designed to force an employer to enter into an agreement which violates section 8(e). 29 U.S.C. § 158(b)(4)(i), (ii)(A). Section 8(e) is designed to prohibit agreements or activities with secondary effects. A secondary boycott, for example, is designed to coerce

---

**3.** Section 8(b)(4) of the NLRA provides, in relevant part:

(b) It shall be an unfair labor practice for a labor organization or its agents—

(4)(i) to engage in ... a strike ... or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—

(A) forcing or requiring any employer or self-employed person to join any labor or employer organization *or to enter into any agreement which is prohibited by subsection (e) of this agreement.*

29 U.S.C. § 158(b)(4)(i), (ii)(A)(1988) (emphasis added).

**4.** Section 8(e) states in relevant part:

It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforceable and void[.]

29 U.S.C. § 158(e)(1988).

third-party customers or suppliers to withhold business relations from a primary employer. The distinction between primary and secondary activity focuses on intent. Plaintiffs argue that the purpose of the strike and picketing was to force them to enter into a "hot cargo" agreement prohibited by section 8(e) of the NLRA. Thus, the issue in this case is whether the clause violates section 8(e).

Both parties agree that the clause would violate section 8(e) if it has secondary objectives designed to affect the labor relations of a separate, third-party employer. Plaintiffs assert that the clause has secondary effects because it would operate to apply the terms of the CBA to neutral, although related, employers. Specifically, "related companies may constitute separate employers for purposes of the secondary boycott provisions of the Act." Brief of Plaintiffs–Appellants at 19–20. Plaintiffs fear a situation where "if a husband were an officer, director, partner or stockholder in a union company, the clause, by its terms would apply to another company which might be solely owned by his wife or another family member because of the indirect management or control language of the clause." Id. at 17–18. Plaintiffs argument focuses on the "direct or indirect" language of the clause to demonstrate its overbreadth.

Plaintiffs frame the question of whether the clause violates section 8(e) in terms of a four-part test used by the NLRB and the Supreme Court to determine if two entities constitute a single employer. South Prairie Construction Co. v. Local No. 627, Int'l Union of Operating Engineers, 425 U.S. 800, 802 n. 3, 96 S.Ct. 1842, 1843 n. 3, 48 L.Ed.2d 382 (1976) (per curiam) (four elements are " 'interrelation of operations, common management, centralized control of labor relations and common ownership.' ") (citation omitted). Plaintiffs therefore criticize the Magistrate for failing to make findings of fact as to whether Bertke and Belemech were a single employer under these standards. In particular, plaintiffs argue that although Belemech was a non-union subsidiary of Bertke Investments, it should be considered a neutral for labor relations purposes.

However, we find the NLRB's single employer test to be inapplicable to the instant case. The Supreme Court has clearly stated that work preservation clauses do not violate the NLRA merely because a neutral employer is to some degree affected. National Woodwork Mfrs. Ass'n v. NLRB, 386 U.S. 612, 627, 87 S.Ct. 1250, 1259, 18 L.Ed.2d 357 (1967) ("This Court [has] accordingly refused to read § 8(b)(4)(A) to ban traditional primary strikes and picketing having an impact on neutral employers even though the activity fell within its sweeping terms."). Relying on National Woodwork, the Magistrate correctly addressed its inquiry to whether the clause was "primary", or "directed to the labor relations between the contracting employer and its union employees." J.App. at 82. Thus, the impact on neutral employers is not relevant because a bona fide effort to preserve jobs in the face of a threat is a primary objective. National Woodwork, 386 U.S. at 640, 87 S.Ct. at 1266. See also NLRB v. Int'l Longshoremen's Ass'n, 473 U.S. 61, 79, 105 S.Ct. 3045, 3056, 87 L.Ed.2d 47 (1985) (ILA II) (clause "to preserve work in the face of a threat to jobs" has a "clear primary objective").

Plaintiffs also correctly state that a clause which seeks to acquire work for the union rather than to preserve existing work violates section 8(e). In support of plaintiffs' contention that the clause at issue was meant to acquire rather than to preserve work, they describe a separate non-union or "merit shop" market which exists apart from the unionized market. Plaintiffs then assert that Belemech was a non-union, "merit shop" company and that the clause was therefore acquisitive because any work which Belemech performed was work which would never have gone to Local 212 in the first place.

We are unconvinced by plaintiffs' argument. First, plaintiffs incorrectly emphasize the union/"merit shop" distinction. The proper focus of analysis should be "the traditional work patterns that the parties are allegedly seeking to preserve, and ...

how the agreement seeks to accomplish that result under the changed circumstances[.]" *ILA I*, 447 U.S. at 507, 100 S.Ct. at 2315. As the Magistrate recognized, "[l]abor has the right to seek to preserve traditional work in an attempt to respond to change." J.App. at 91. The growth of non-union companies performing work which was traditionally performed by union companies is precisely the environment where work preservation clauses are most essential. The Magistrate found that the work preservation clause stemmed from Local 212's desire to preserve work it had traditionally done which it feared was slipping away to non-union "double-breasts". The clause only addresses efforts by the primary employer to avoid the CBA by performing union jobs through other entities it controls. As the Magistrate stated, "the fact that work has been eliminated through some change or innovation provides both the motivation and need for work preservation clauses." J.App. at 91.

We conclude that the clause does not violate section 8(e). The purpose of the clause in this case was to preserve union jobs. The secondary effects which plaintiffs base much of their argument on does not address the Magistrate's conclusion that defendants "face the threat of losing traditional work to a nonunion double-breast, such as Belemech." *Id.* Because insistence on the clause was a response to this threat, the union has demonstrated that the primary object of the clause was work preservation. As the Supreme Court has stated, "[w]hen the objective of [a work preservation] agreement and its enforcement is so clearly one of work preservation, the lawfulness of the agreement under §§ 8(b)(4)(B) and 8(e) is secure absent some other evidence of secondary purpose." *ILA II*, 473 U.S. at 81–82, 105 S.Ct. at 3057–58.

## II

Given our conclusion that the work preservation clause at issue does not violate section 8(e), we decline to address plaintiffs arguments that the clause is not protected by the construction industry proviso. We note, however, that the Supreme Court has relied on the proviso to endorse a preservation clause broader than the one in dispute in the instant case. In *Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645, 648–49, 102 S.Ct. 2071, 2074–75, 72 L.Ed.2d 398 (1982), a union demanded that a clause be inserted in a CBA prohibiting the subcontracting of work at a construction jobsite " 'except to a ... signatory to this Agreement.' " *Id.* As in the case at bar, the union picketed and the employer filed unfair labor practice charges, claiming a violation of section 8(e). The Court unanimously held that the construction industry proviso protected the clauses sought by the unions:

> We hold that the construction industry proviso to § 8(e) of the National Labor Relations Act ordinarily shelters union signatory subcontracting clauses that are sought or negotiated in the context of a collective-bargaining relationship, even when not limited in application to particular jobsites at which both union and non-union workers are employed. This interpretation of the proviso is supported by its plain language, as well as the legislative history.

*Id.* at 666, 102 S.Ct. at 2083.

Thus, we would agree with the Magistrate that the proviso supports the validity of the work preservation clause.

In addition, we also find the issue of the liability of the International to be moot in light of our conclusion that the clause does not violate section 8(e).

## III

As we find the Magistrate's analysis of the validity of the work preservation clause to be correct, the judgment of the district court is AFFIRMED.